**Dorothy F. SCHARF, Plaintiff,**

v.

**LEVITTOWN PUBLIC SCHOOLS, Defendant.**

No. CV 92–4693(ADS).

United States District Court, E.D. New York.

July 11, 1997.

Ronald A. Lenowitz, Woodbury, NY, for Plaintiff.

Ingerman & Smith, L.L.P., Northport, NY, Christopher Venator, of counsel, for Defendant.

### MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

### PROLOGUE

Stipulations of settlement are favored by the courts and not lightly cast aside (*see Matter of Galasso*, 35 N.Y.2d 319, 321, 361 N.Y.S.2d 871, 320 N.E.2d 618). This is all the more so in the case of "open court" stipulations (*Matter of Dolgin Eldert Corp.*, 31 N.Y.2d 1, 10, 334 N.Y.S.2d 833, 286 N.E.2d 228) ... where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process.

*Hallock v. State of New York*, 64 N.Y.2d 224, 485 N.Y.S.2d 510, 512, 474 N.E.2d 1178 (1984).

### THE "OPEN COURT" STIPULATION

On June 13, 1994, the parties settled the above-entitled employment discrimination action and entered into a stipulation in open court. The salient terms of the stipulation with regard to this hearing are the following:

**124**

THE COURT: Put in the stipulation and then we'll swear in your client to see if she agrees. Mr. Block is ready to go. Okay.

Put the stipulation. Please advise your client to listen carefully to this.

MR. BLOCK: The terms of the stipulation would be that effective August 1, 1994, Ms. Scharf will be assigned secretarial duties on behalf of the administrator who will be replacing the current director of physical education for the school district, that administrator has yet to be chosen.

The assignment is a district-wide position. It will occur in one of the buildings of the school district but it will not be in the Levittown Memorial Education Center.

In her capacity, Ms. Scharf it [sic] will be performing secretarial duties related to exposure control.

(1). Exposure control.

(2). Student benefit.

(3). Building utilization.

(4). The right-to-know procedure which has been adopted by the school district.

. . . that Mrs. Scharf will cease any practice of maintaining a log concerning her coworkers, and the demand for arbitration which was filed—

THE COURT: And there will be no harassment.

MR. WEINER: No harassment by Ms. Scharf by anyone in her current position or after she is removed from that position and given the new position.

THE COURT: All right.

Now the case will be dismissed with prejudice, but the Court will retain jurisdiction to enforce the terms of the settlement. The parties will exchange whatever papers are necessary in order to effectuate a dismissal. There will be no further attorney's fees or money paid at all by the defendant school district.

Anything else you want to add to that.

THE PLAINTIFF: My title and benefits and all of that remain the same.

THE COURT: Your title and benefits remain the same, yes.

THE PLAINTIFF: Seniority and title?

THE COURT: That wasn't even a subject of the dispute.

Is that agreeable to you Mr. Weiner, on behalf of your client?

MR. WEINER: It is.

THE COURT: Is that agreeable to you, Mr. Block and Mr. Venator?

MR. BLOCK: That is correct.

MR. VENATOR: Yes.

THE COURT: Ms. Scharf, you've heard the terms of the stipulation. Do you agree to each and every term of the stipulation?

THE PLAINTIFF: Yes.

THE COURT: Do you understand all the terms.

THE PLAINTIFF: Yes.

THE COURT: Do you agree with them?

THE PLAINTIFF: Yes.

THE COURT: Do you understand that you will get back $2,500 that I recommended that the school district will pay to you, and they were very reluctant, but they agreed to do that. Do you understand that?

THE PLAINTIFF: Yes.

THE COURT: And that's the end of the case on these terms. You will not come back to court any more, as long as they keep to the terms and they keep it and you keep to the terms.

THE PLAINTIFF: Yes, sir.

THE COURT: Is that agreeable?

THE PLAINTIFF: Yes, sir.

The "open court" stipulation of settlement was amended by the parties by a letter dated August 29, 1994, in which the duties to be performed by the plaintiff Dorothy Scharf (the "plaintiff" or "Scharf") in her new secretarial position were changed, as follows:

I am writing to confirm that the parties have agreed to amend that portion of the Stipulation of Settlement, dated June 13, 1994, with respect to the duties to be performed by Dorothy Scharf in her new

secretarial position at the office of the Assistant Principal for Physical Education/Athletics.

Specifically, Dorothy Scharf will occupy the desk previously occupied by Marge Samilo and will assume the job duties previously performed by Marge Samilo.

The remaining terms and conditions of the Stipulation of Settlement shall remain in full force and effect.

Please return an executed original of this letter.

Very truly yours,

/s/

Neil M. Block

AGREED TO AND ACCEPTED BY:

/s/

Harold Weiner, Esq.

Attorney for Dorothy Scharf

As stated in the letter amending the stipulation of settlement, the duties of Dorothy Scharf in her new position was to "occupy the desk previously occupied by Marge Samilo" and to "assume the job duties previously performed by Marge Samilo."

### THE MOTION AT ISSUE

By notice of motion dated August 15, 1996, the defendant Levittown Public Schools (the "defendant" or the "School District") moved for an order "authorizing the defendant to reassign the plaintiff to a comparable secretarial position within the Levittown Public Schools." The basis for the motion as set forth in the affidavit of Christopher Venator, Esq., dated August 15, 1996, is that "the working relationship between Ms. Scharf and the Assistant Principal and a co-worker has deteriorated to such an extent that it is not feasible to maintain Ms. Scharf in her current position."

Despite efforts by the Court and counsel to ameliorate this situation, no amicable resolution has been effectuated. In an Order dated March 8, 1997, the Court stated in relevant part:

The Court has doubts whether the relief sought by the defendant, Levittown School District, is obtainable pursuant to Fed. R.Civ.P. 60(b). Accordingly, the Court denies the District's motion for an Order authorizing the defendant to reassign Scharf to a comparable secretarial position within the Levittown Public Schools based on Fed.R.Civ.P. 60(b).

However, because this Court has retained jurisdiction to enforce the stipulation of settlement placed on the record on June 13, 1994, it directs the parties to appear before this Court on Friday April 11, 1997 at 1:30 pm for a hearing on the following issues:

(1) Whether the Court should authorize the requested transfer pursuant to the stipulation of settlement;

(2) Was there a breach of the stipulation of settlement by any party; and

(3) If there was such a breach, what penalty or remedy should be imposed, if any.

### THE HEARING

The hearing directed by the Court in its March 8, 1997 Order took place on Friday, June 27, 1997. At the hearing three witnesses testified on behalf of the defendant School District. The first witness was Robert A. Presland, the Assistant Principal of Physical Education and Athletics. He is the supervisor referred to in the stipulation as the "administrator . . . yet to be chosen" for whom the plaintiff was to work. The Court finds Presland to be a believable witness and credits his testimony.

As Assistant Principal of Physical Education and Athletics, Presland has two employees in his office, the plaintiff and Anna Schmitt ("Schmitt"), a senior typist. Presland's association with the plaintiff commenced in August 1994 and continued to the present date. This association transcended the September 1994—June 1995, September 1995—June 1996 and September 1996—May 1997 school years. Both the plaintiff and Schmitt are secretaries in the Athletic Department office. Among her duties, the plaintiff takes dictation and handles communications. Apparently, both Scharf and Schmitt are Presland's secretaries.

According to Presland, the first year "went rather smoothly." He was learning his new job, and if there were any problems, he tried to "iron them out." Problems arose in the second school year of his association with the plaintiff. In October and November 1995, the plaintiff and Schmitt had difficulty getting along; as each reported to him. Scharf stated that she was Presland's secretary and would not take any directives from Schmitt.

Further, in February 1996, Schmitt told him that the plaintiff was monitoring and writing down everything Schmitt did, which made her feel uncomfortable. Presland reported this fact to his superior Gerald Claps, the Assistant Superintendent for Administration of the School District. Claps asked Presland whether there was any evidence of this monitoring by Scharf. In an attempt to prove this "monitoring" by Scharf, the School District introduced several documents. Defendant's Exhibit A ("Def.Exh.") is a memorandum from Presland to Claps dated March 4, 1996, which states:

As per our conversation during the school year, you had indicated that if I found any evidence of Mrs. Dorothy Scharf keeping a daily log to inform you immediately. Please see [attachment 1 and 2] of a log which was on the desk of Mrs. Scharf. This clearly indicates that Mrs. Scharf is in fact keeping a log of the everyday occurrences in the office.

This behavior is truly unprofessional and is causing stress with the office staff, not to mention the difficult working relationship between office personnel.

At this time, I am requesting the immediate removal of Mrs. Dorothy Scharf from my office.

Thank you for your cooperation.

Attached to this memorandum were two handwritten sheets. The first sheet dated February 29, 1996, contained four time entries—10:40, 10:55, 11:15 and 11:30. While some of the writing was unintelligible, parts of the writing were interpreted by Schmitt and Scharf herself, as follows:

*2/29/96*

10:55  A [Anna Schmitt] to employee benefits. Retd [Returned]

11:15  ... cosmetology students.

sorted out Pos to chg code; after lunch so A [Anna Schmitt] doesn't see what I'm doing

11:30  Phone ... cable are yours?  No ... A ...

The second sheet dated Friday, March 1, 1996, contained eight time entries—1 PM, 1:10, 1:15, 1:30, 1:35 2:15, 2:20 and 2:30. Again, while some of the writing could not be deciphered, a portion of the writings were interpreted by Schmitt and Scharf, as follows:

*3/1/96*

*1 PM*  A [Anna] in with Bob. So what else is new?

*1:10*  A [Anna] left for lunch. I take out tape.

*1:15*  Fin [finished] I went looking for Carol ...

*1:30*  Debbie [in] personnel for Bob. Sneaky????

*1:35*  Pat Hoyt took 2 boxes of Uristiks.

*2:15*  A [Anna] retd [returned] J [John] Hoffman.

*2:20*  Bob to Northside with boxes. Got folder from ... Claps [of] BofE (4) Gianelli ... (6) Claps.

DROP DEAD!

Schmitt testified that she saw other logs on the plaintiff's desk but at first she "didn't have the nerve" to take them. Schmitt saw these log-type documents on a pad, which was on the plaintiff's desk daily. The plaintiff hid the pad under other papers. Schmitt saw these logs from December 1995 to January 1996. She began to make copies in January and February 1996.

On April 2, 1996 Schmitt filed a grievance against Dorothy Scharf. (*See* Def. Exh. D). In this memorandum of grievance, Schmitt complained of the following conduct by Scharf:

I have been very tense at work for the past year as she is constantly keeping a record of everything that goes on in this department. I have physically seen her write down every phone call that I get on my extension which are business calls; also indicate every person that comes into

the office to discuss business with me and if I leave the office to go to another department she also puts that down and how long I am gone. At this point, I wish to get a restraining order against her because since she is writing down my every move, I feel she is stalking me.

No matter what is said in this department which should be *confidential* if it pertains to work, she writes it down. The reason I am scared to work with her is I have seen her write down things that make no sense whatsoever, for instance, if she has said to me "Did you try the cake for someone's birthday?" and I answer "No, I feel full today", she writes down my answer, or if someone comes past our office and tells us to have a nice day, she writes that down whoever it was said "Have a nice day". She quotes everyone and everything that goes on in the department. I honestly have come to the conclusion that there may be a definite problem here.... It is affecting my work here as I am very tense every time I say anything because I know she will quote me even though I feel I am doing nothing wrong. I feel she doesn't have the right to keep a log of my every move.

.     .     .     .     .

I have seen her write down when *Bob Presland* leaves the office also and where *he* is going and if he is carrying something. She writes every little thing down. The reason I have come to the point of copying these papers which she writes on is I was frightened for my safety when I caught on what she was doing and writing down my every move every day .... Working with her has even affected my home life because I can't just turn off how I feel when I leave the office. It is always on my mind so I am very tense at home too. I feel it is an invasion of my privacy and no one has the right to write down my every move as this is making me very uncomfortable.

The bottom line is I can't work compatibly with her and also do my work efficiently. I feel I have been tolerant of her and gave her a chance the first year working with her but this second year has really taken a toll on me. I can't express enough how uncomfortable I am working with her, therefore, for my own sanity and to perform my job to the best of my ability, I am asking for a transfer out of this department. *Id.* (emphasis in original).

Also introduced in evidence as Def. Exh. C are a series of memoranda from Presland dated February 7, 1997, which were typed by the plaintiff. The memoranda themselves are not relevant to the issues in this hearing. However, the plaintiff's notes written on the first memorandum are significant. Through the testimony of Schmitt and the plaintiff, some of the handwritten notes were deciphered, as follows:

... when I left at 2:30 told Groveman—should I tell Davis. Told CSEA ...

A [Anna] had something set up—she came in @ 7:40 and left @ 1:45—He left and told me where and when but not me! [Apparently referring to a funeral] ... NOTE: A [Anna] ... did for Lawrence.

A [Anna] sneaked out @ 1:45. I went and told Groveman.

He thought he gave me enough to do to keep me busy until 3:30. Ha! Ha!

Anna Schmitt has been employed by the School District since March 1993 as a senior typist clerk. The Court credits Schmitt's testimony. Since March 1993, she has been a secretary in the Physical Education office. She and the plaintiff are the only secretarial employees in that office. Starting in June 1995, Schmitt has been having problems with the plaintiff. At that time, Schmitt was standing near the plaintiff's desk when the plaintiff abruptly pushed her away from the desk. This testimony was unrefuted by the plaintiff.

During the 1995/1996 school year, Schmitt noticed that Scharf "jotted things down on a pad everyday." She saw the plaintiff continually logging events "every five minutes," even when someone went to the bathroom. For example, Scharf even noted that "Anna [was] too full" to eat some cake. Schmitt was bothered by this surveillance and logging and "felt she was stalking me." She reported her concerns to Presland and to her husband.

At the present time, the working relationship between Schmitt and Scharf is hostile and antagonistic. In fact, they do not talk at all, a situation which is detrimental to the efficient operation of the Athletic Department.

Gerald Claps is the Assistant Superintendent for Administration of the School District. Claps has known the plaintiff and her family for more than thirty years. He was present in court on June 13, 1994, when the stipulation of settlement was placed on the record. Claps arranged for Scharf to be assigned to the Athletic Department where he replaced Marge Samilo and assumed her position as secretary for the new Assistant Principal of the Department of Athletics and Physical Education. (*See* the letter agreement dated August 29, 1994).

Presland reported in writing to Claps that the plaintiff was making mistakes in her memoranda and that she was logging events which occurred in the office. In April 1996, Claps met with Scharf, discussed the plaintiff's logging activities and told her that "[t]his has to stop." In a memorandum from Scharf to Presland dated March 26, 1996 (*see* Def. Exh. B), the plaintiff admitted she was logging:

> You have attempted for personal reasons to undermine and sabotage my work, my good name and I have hard evidence to prove this in the form of my daily log, my backup discs and my tapes of our conversations which will be presented to the appropriate forum if you persist in this manner.

> .    .    .    .    .

> On the 9th—according to my log—you specifically mentioned that I do the pages which had the new telephone numbers on.

> .    .    .    .    .

> My mistake. You directed me—according to my log—to remove the lines.

According to Claps, there were continuous difficulties and "ongoing turmoil" in the Athletic Office. Schmitt filed a grievance against Scharf which was referred to the Union. In the past 1996/1997 school year, even after the School District's motion was filed with the Court, the problems with Scharf continued. Both Schmitt and Presland requested transfers. Presently, Claps requests permission to transfer the plaintiff to the Department of Instruction, to be one of the secretaries reporting to Dr. Sirois, the Assistant Superintendent of Schools. In this position, the plaintiff would earn the same salary and be entitled to the same benefits.

Dorothy F. Scharf testified that she was employed by the School District for forty years commencing on February 1, 1957. Following the June 13, 1994 stipulation of settlement in open court, Scharf assumed the position of secretary to Presland, the new Director of Physical Education. Her job title was stenographer secretary. Her salary is now $45,000 per year.

Scharf testified that she assumed the desk of Marge Samilo, but not her duties. She said she "did what Presland gave me," but she was "out of the loop." As to her relationship with Presland Scharf testified that "he talks down to me and treats me with contempt." For example, she asked Presland "not to lean over me and not to use my phone when he had a cold." She testified that Presland "gave her a hard time on vacation time and sick time." Scharf felt that such conduct by Presland constituted harassment. She further stated that Schmitt doesn't "pay attention to the clock but I have another life."

Scharf discovered that Schmitt and Presland were "snooping around" her desk and in her computer and she voiced her displeasure. Claps presented her with a proposal to relocate her to another position; but she declined to move to what she described was an entry level position. She expressed hope that with Presland leaving and a new administration coming in, things would be different.

Scharf conceded that at an August 29, 1994 meeting, she agreed to assume the duties of Marge Samilo. Although Scharf testified that her working relationship was "professional," she concedes that the two secretaries really had ineffective communications. In fact, the Court finds that the relations between the two secretaries was acrimonious and communications between the two was virtually non-existent.

On cross-examination, Scharf was questioned about her "logging" activities. The Court finds that her responses as to whether she was logging as charged were evasive and not believable. Scharf testified that the logging entries in evidence (*see* Def. Exhs. A, C), were made by her to keep track of Schmitt's whereabouts. This itself is a bizarre activity with regard to two secretaries who have to work together. Scharf further testified that she "logged" only during the short periods of time set forth in the exhibits in evidence. The Court finds such testimony not to be credible. Scharf was asked whether she made other similar notes and she testified, in an evasive manner, "I don't remember doing it," and "Not that I remember." Scharf knew she should not have engaged in this logging activity. She admitted that "I was told by the Judge not to do it."

### DISCUSSION

■ Where the parties to a settlement agreement provide for the Court to retain jurisdiction over the settlement agreement, the Court has jurisdiction to enforce the terms of the settlement agreement. In such situations, ancillary jurisdiction to enforcement of the agreement exists. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 380–82, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994). See also *Scelsa v. City University of New York*, 76 F.3d 37, 40 (2d Cir.1996).

■ An agreement made on the record, in open court, and "under the eyes of the Court," is a most solemn undertaking requiring the lawyers and the parties to make every reasonable effort to carry out all the terms to a successful conclusion. *Warner v. Rossignol*, 513 F.2d 678 (1st Cir.1975). Where there is a material breach of the settlement agreement, a district judge may enforce the terms of the stipulation of settlement by altering the terms of the agreement. *In re Air Crash Disaster*, 687 F.2d 626, 629 (2d Cir.1982).

■ In this case, the Court finds that the plaintiff Dorothy F. Scharf violated a material term in the stipulation of settlement. The stipulation provided that "Ms. Scharf will cease any practice of maintaining a log concerning her coworkers." The Court finds that, notwithstanding the plaintiff's agreement in open court not to log her co-workers, she continued to do so, in a most detailed and derogatory manner. This practice was so upsetting to the School District that it requested a specific prohibition in the stipulation of settlement. However, for whatever reason, notwithstanding her promise in open court not to do so, the plaintiff continued her logging activities.

Not only did the plaintiff violate a material term in the stipulation of settlement, but this practice of "logging" all the activities of her fellow employees and her supervisor with disparaging editorial comment, caused dissention in the Athletic Office. This situation is intolerable and must cease.

In this hearing, the plaintiff has charged the defendant School District, and co-employees Presland and Schmitt in particular, with harassing her. The Court finds no evidence of any harassment on the part of the plaintiff's co-employees. The manner of obtaining the plaintiff's log notes presently in evidence, although regrettable, was induced by the plaintiff's conduct in persisting to report the activities of her colleagues, in direct violation of her agreement.

The issues set forth in the Court's March 8, 1997 Order, are resolved after the June 27, 1997 hearing, as follows:

1. There was a breach by the plaintiff of a material term in the stipulation of settlement, as set forth above.

2. The remedy for the breach is the authorization for the requested transfer.

■ Accordingly, based on this material breach by the plaintiff, the defendant's request for an Order authorizing the defendant Levittown School District to reassign the plaintiff to a comparable secretarial assignment within the Levittown Public Schools with equivalent salary and benefits, is granted. Such a new assignment may be made immediately for the commencement of the 1997/1998 school year.

**SO ORDERED.**