Robert PURCELL, Plaintiff,

v.

TOWN OF CAPE VINCENT and Harold J. Kiddo, Defendants

George C. Couch; Elizabeth S. Price–Kellog; Jeremy Price–Kellog; Robert A. Uhlig and Ruth A. Uhlig, Plaintiffs,

v.

Town of Cape Vincent, Defendant,

Nos. 87–CIV–1212, 01–CIV–1519.

United States District Court, N.D. New York.

Sept. 15, 2003.

Green & Seifter, PLCC, Syracuse, NY (Daniel J. French, Dafni S. Kiritsis, of counsel), for plaintiffs.

Conboy, McKay, Bachman & Kendall, LLP, Watertown, NY (Scott B. Goldie, Of Counsel), for defendant.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

## BACKGROUND

***The original settled lawsuit instituted by the deceased Robert Purcell:***

In August 1987, the late Robert Purcell commenced an action against the Town of

Cape Vincent ("the Town") and Harold J. Kiddo, ("Kiddo") in this court. The complaint alleged that at the direction of the Town Board, Kiddo, the Town Highway Superintendent, together with personnel of the Town Highway Department entered a portion of Purcell's real property without his permission and constructed a highway thereon known as Dablon Point Road. This unlawful trespass destroyed plaintiff's real property and was an illegal seizure of his real property without just compensation in violation of 42 U.S.C. § 1983. Jurisdiction was based on 42 U.S.C. § 1983, 28 U.S.C. § 1343 and 28 U.S.C. § 1331. The complaint asked for compensatory damages as well as injunctive and declaratory relief.

The defendants claimed that there was no trespass upon, or unlawful taking of the portion of plaintiff's real property where they had constructed the road because that parcel had become a highway by use through continuous public utilization for over ten years and was continuously maintained and controlled by the Town throughout that time period.

The parties reached a settlement prior to trial and this court dismissed the case by reason of the settlement on May 5, 1989. The settlement stipulation was made in open court by the attorneys for the respective parties. The terms provided that the Town would reimburse plaintiff for damage caused to his real property by its road construction; plaintiff would construct a new road parallel to Dablon Point Road, but on the other side of his real property; when plaintiff has completed this road, he will convey it to the Town; the Town would then undertake the procedure to have Dablon Point Road abandoned and then open the new road. The abandonment of Dablon Point Road would require a hearing where the proposal could be attacked by the Town's residents that could lead to its disapproval. However, the Town's counsel assured that "We have

no reason to believe that there will be such an attack, or if there is, it will be successful."

The settlement stipulation further provided that the action would be dismissed without prejudice, and that this court would retain complete jurisdiction to vacate its settlement order and to reopen the action upon cause being shown that the settlement has not been completed and further litigation is necessary.

### Case history from the settlement date to the present lawsuit:

Dablon Point Road was a dirt and gravel pathway transformed into a roadway, situated in the Town of Cape Vincent ("the Town"), Jefferson County, New York, that extends along the shoreline of Willow Bay, Lake Ontario. The plaintiffs' real properties abut and include Dalton Point Road. The plaintiffs acquired their real properties from Robert Purcell ("Purcell") in June 1991.

In 1987, Purcell instituted legal proceedings against the Town, in the United States District Court for the Northern District of New York ("the federal action"). The Dablon Point pathway ran across Purcell's real property and gave Town residents access to the Willow Bay waterfront. When the Town's highway superintendent had a 20 foot wide corridor of dirt, stone and gravel placed over the pathway, Purcell commenced his lawsuit. The complaint alleged trespass and an unconstitutional illegal taking of his real property by the Town.

The federal action was settled in May 1987. The settlement agreement called for Purcell to construct a new road across the other side of his property parallel to Dablon Point Road. The new road was to be completed by September 1, 1989. The Town would then complete construction of the new road in the summer of 1990. Thereafter, the Town would follow the pro-

cedures set forth in the New York State Highway Law to have Dablon Point Road abandoned sometime in the fall of 1990. Under the settlement terms, the Town would pay Purcell fifteen thousand dollars ($15,000) for damages to trees on his property. Purcell did not undertake construction of the new road or satisfy the other terms of settlement, and when he became gravely ill during the spring of 1991, decided to no longer proceed with the settlement and returned the $15,000 to the Town. Due to his declining health, Purcell sold his real property to the plaintiffs in June 1991, his interest in the claims and stipulated settlement in federal court action were assigned to the plaintiffs in November 1991.

In October 1992, Town authorities met with the plaintiffs and advised them to move forward with construction of the new road. In compliance with the settlement agreement, all of the property owners along Dablon Point Road consented to the proposed location of the new road. On July 5, 1995, plaintiffs and their contractor met in the Town's offices and obtained copies of the new road specifications prepared by the Town Highway Department. In a letter dated July 21, 1995, the landowners along Dablon Point Road acknowledged their intentions to grant a right-of-way to the Town for the new road.

In August 1995, plaintiffs applied to the Town seeking abandonment of the Dablon Point Road and dedication of the new road. In response, the Town passed a resolution on August 10, 1995, providing that plaintiffs would donate the land for the construction of the new road as specified, and upon acceptance of the new road by the Town, the Town Board would "take the proper legal steps to abandon the present Dablon Point Road to the adjoining property owners." The resolution made no reference to the stipulation of settlement in the federal action.

Plaintiffs then began the construction of the new road, and substantially completed it by early October 1995. On October 12, 1995, the Town Board resolved to modify the August 1995, resolution deleting the provision that required it to take legal steps to abandon Dablon Point Road after acceptance of the new road. The plaintiffs then filed an Article 78 claim in state court demanding that the October 15, 1995 resolution be invalidated, and the full terms of the August 10, 1995, resolution be reinstated. By order dated February 15, 1996, the state court directed the Town Board to comply with the terms of the August 10, 1995 resolution and take the procedural steps required to abandon Dablon Point Road.

When the Town did not abide by the state court order, the plaintiffs instituted another state court action alleging breach of the 1989 federal action settlement agreement and the Town's August 10, 1995 resolution. The state court granted plaintiffs' motion to discontinue this action by order dated December 13, 2001.

On April 24, 1998, plaintiffs submitted an "Application for Dedication of Lands to Become the New Dablon Point Road, Contingent Upon the Discontinuance or Abandonment of the Existing Dablon Point Road" to the Town. Thereafter, in accordance with the provisions of the New York State Highway Law, the Town Board scheduled a public meeting for August 27, 1998, to consider the petition plaintiffs' Application. Plaintiffs appeared at the hearing and presented their Petition for Dedication. Approximately 100 people attended the hearing, and 30 spoke regarding the abandonment issue. The Town Board also received a large amount of correspondence from interested parties. On January 14, 1999, the Town Board passed a Resolution not to abandon Dablon Point Road.

Plaintiffs then commenced another state court Article 78 proceeding against the Town contending that the Town Board's January Resolution was arbitrary and capricious. In an Order dated April 22, 1999, the state court rejected plaintiffs' contentions, and found that the Board had carefully weighed the input at the public hearing and conducted its own investigation, and concluded that "[s]ince the Highway Law left the legal door open into 1999, the current Town Board was authorized to vote on this lingering question of abandonment." The state court's decision was affirmed without opinion by the Appellate Division, Fourth Department on June 16, 2000.

Plaintiffs began this action on October 5, 2001, alleging that the Town violated plaintiffs' constitutional rights by the unlawful taking of plaintiff's private property without due process violation of 42 U.S.C. § 1983, and that the Town breached the terms of a stipulation of settlement and of a resolution of the Town Board. The complaint seeks monetary, injunctive, declaratory, attorney's fees and costs. Jurisdiction again was based on 42 U.S.C. § 1982, 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

Currently before the court are cross motions by the respective parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### DISCUSSION

Stipulations of settlement are favored by the courts and are not lightly cast aside, and this is all the more so in a case of open court stipulations where strict enforcement not only serves the interest of efficient dispute resolution but is also essential to management of court calenders and integrity of the litigation process. *Scharf v. Levittown Public Schools*, 970 F.Supp. 122, 123 (S.D.N.Y.1997), (citing, *Hallock v. State of New York*, 64 N.Y.2d 224, 230, 485 N.Y.S.2d 510, 512, 474 N.E.2d 1178 (1984)). An agreement made on the record, in open court and "under the eyes of the Court" is a most solemn undertaking requiring the lawyers and the parties to make every reasonable effort to carry out the terms to a successful conclusion. *Warner v. Rossignol*, 513 F.2d 678, 682 (1st Cir.1975).

When a district court "so orders" a stipulated settlement, it does accept some obligations. The clearest obligation is a duty to enforce the stipulation that it has approved. *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir.1977). In many actions, a stipulated settlement agreement will contemplate actions that are not within the power of the litigants to perform but rather lie within the power of the district court ordering the settlement. When a district court "so orders" a settlement containing such provisions, it is, with some limited exceptions, obliged to perform. *Geller v. Branic International Realty Corp.*, 212 F.3d 734, 737 (2d Cir.2000).

The jurisdictional basis and relief sought in the instant case are identical to those in the Robert W. Purcell's 1987 case, and, while the sole issue in the former case is the taking of Dablon Point Road, that issue is subsumed in the latter case with the issues regarding the completion of the settlement agreement. Therefore, the cases will be consolidated, and plaintiffs' summary judgment motion will be considered a motion to enforce the settlement agreement reached by the respective parties in the 1987 action.

"The proper solution to the problems created by the existence of two or more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42(a) of the Federal Rules of Civil Procedure." *Miller v. United States Postal Service*, 729 F.2d 1033, 1036 (5th Cir. 1984).

The related cases, here, involve common questions of law and fact, similar issues, relief sought, and, for all intents and purposes, the parties are identical. In reality, the suits are based upon the same causes of action, the only difference appearing to be the allegations of the extent of the alleged wrongdoing

A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a). See, *In re Adams Apple, Inc.*, 829 F.2d 1484,1487 (9th Cir. 1987). Rule 42(a) provides that consolidation is acceptable "[w]hen actions involving a common question of law or fact are pending before the court." Fed.R.Civ.P. 42(a). Consent of the parties is not required, it is the court's decision whether or not consolidation is proper The Rule should be prudently employed as "a valuable and important tool of judicial administration," *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031, 116 S.Ct. 2576, 135 L.Ed.2d 1091(1996), invoked to expedite a joint hearing or trial and eliminate unnecessary repetition and confusion, *Miller*, 729 F.2d at 1036. However, under the applicable law, efficiency cannot be permitted to prevail at the expense of justice. Consolidation should be considered when "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Consorti*, 72 F.3d at 1007.

Defendant contends that consideration of plaintiffs' claims is barred by the state court decisions under the doctrine of *res judicata*. Defendant's contention is without merit. Enforcement of a settlement agreement is a state court matter unless a federal court has an independent basis for jurisdiction to enforce the settlement agreement. *Scelsa v. City University of New York*, 76 F.3d 37, 42 (2d Cir. 1996). "It is elementary that a judgment entered in an action over which the court lacks jurisdiction cannot be afforded any binding force." *Lacks v. Fahmi*, 623 F.2d 254, 256 (2d Cir.1980).

On page 10 of its order approving the April 1990 settlement in this case, the court stated: "I'm going to dismiss this action without prejudice. I shall retain jurisdiction, and I will file an order to this effect to reopen the action if the settlement hasn't been completed and if further litigation appears to be necessary."

Enforcement of a settlement agreement "is more than just a continuation or renewal of jurisdiction, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Insurance Company*, 511 U.S. 375, 378, 114 S.Ct. 1673, 1675-6, 128 L.Ed.2d 391 (1994). Such a basis for jurisdiction may be supplied "by separate provision (such as 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." In the instant case, this court made exactly the type of express provision described in *Kokkonen*, thereby giving the court jurisdiction to enforce the settlement agreement. While the possibility exists that in some circumstances, the words, context, or subsequent order of the federal court might show that retention of jurisdiction was not intended to be exclusive, all the factors in this case and the authorities cited establish that it was. Since the parties consented to this court's retention of jurisdiction over the settlement, defendant has no basis upon which to challenge the court's exercise of its ancillary jurisdiction to enforce the settlement. *Kokkonen*, 511 U.S. at 381–82, 114 S.Ct. at 1677.

The context of the retention of jurisdiction, a provision for future enforcement of a settlement order, implies that the retention was meant to be exclusive. The Second Circuit and the Eleventh Circuit have ruled upon similar language that

did not include the word "exclusive," and have held that the language amounted to retention of exclusive jurisdiction to enforce the judgment. *United States v. American Society of Composers (In re Karmen)*, 32 F.3d 727, 731–32 (2d Cir. 1994); *Battle v. Liberty National Life Insurance Company*, 877 F.2d 877, 880–81 (11th Cir.1989); *United States v. American Society of Composers*, 442 F.2d 601, 603 (2d Cir.1971)(court upheld injunction prohibiting a state court challenge to a proposed fund distribution pursuant to a 21–year–old federal final judgment because it interfered with the federal district court's retained jurisdiction over the case).

The reason why exclusivity is inferred is that it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in the judgment. Such an arrangement would potentially frustrate the federal district court's purpose. It would also impose an uncomfortable burden on the state judge, to determine what the federal judge meant. *United States v. American Society of Composers*, 32 F.3d at 731–32.

"State and federal courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues." *Kline v. Burke*, 260

U.S. 226, 229–30, 43 S.Ct. 79, 67 L.Ed. 226 (1922)(quoting) *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390 (1884).

▆▆▆ In this case, motions for summary judgment were filed by both plaintiffs and defendant. When both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment as a matter of law for one side or the other. *Schwabenbauer v. Board of Education of Olean*, 667 F.2d 305, 313 (2d Cir.1981). When faced with cross motions for summary judgment, a district court is not required to grant summary judgment as a matter of law to one side or the other. *Id.* "Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 314.

▆▆▆ Where the evidence before the court reveals an obvious factual disagreement regarding the completion of a settlement agreement, disposal of the matter by summary judgment is inappropriate. The court's function is not to decide issues of fact, but to determine whether genuine issues of fact exist, *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). Where a factual disagreement exists, a hearing is necessary to resolve the conflict. *Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners*, 676 F.2d 81, 84 (3d Cir.1982).

▆▆▆ After considering the materials submitted in support of the pending cross motions for summary judgment, the court finds a factual disagreement exist as to the completion of the settlement agreement that was reached between the parties.

Accordingly, the cross-motions are **DENIED**, and the above entitled actions will be consolidated for a plenary joint hearing;

pursuant to Federal Rule of Civil Procedure 42(a), the above captioned actions are entirely **CONSOLIDATED** for purposes of a plenary joint hearing; all further papers filed with this court shall bear the caption as set forth above, and, for purposes of administrative convenience only, and in accordance with the protocol of the Office of the Clerk, all further papers filed with this court shall be filed under the earlier civil action number, to wit: Civil Action No. 87–CV–1212.

**IT IS SO ORDERED.**