■ SPIRITS OF ST. LOUIS BASKETBALL CLUB, L.P., Appellant, v DENVER NUGGETS, INC., and its Successor, THE DENVER NUGGETS LIMITED PARTNERSHIP, Doing Business as DENVER NUGGETS, et al., Respondents. [922 NYS2d 349]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered October 19, 2009, that granted defendants' motion to dismiss the complaint, unanimously affirmed, with costs.

Litigation involving the American Basketball Association (ABA), the National Basketball Association (NBA) and some of their teams has a history dating from the 1970s. The various parties in that era resolved their differences via two agreements: the "ABA Agreement" and the "NBA Agreement," both dated July 26, 1976.

By the terms of the ABA Agreement, certain teams that sought to leave the ABA and join the NBA (the teams) agreed to direct the NBA to pay plaintiff Spirits of St. Louis Basketball Club, L.P., a portion of revenues from certain telecasts of NBA games for as long as the NBA existed (the TV revenues). The ABA Agreement contained a clause designating the United States District Court for the Southern District of New York (the Southern District) as the exclusive forum to enforce the ABA Agreement: "The parties agree that this Agreement shall be

filed in the Lawsuit in the United States District Court, Southern District of New York, as a stipulation of settlement of the Spirits' Amended Cross-Claim, and the parties shall request the Court to issue an Order decreeing that this Agreement shall have the effect of a Judgment therein pursuant to which the Court *shall* retain jurisdiction over the parties to enforce the terms of this Agreement and the Judgment" (emphasis added).

In conjunction with the ABA Agreement, the parties also executed a "Consent Judgment." The Consent Judgment provided for "this Court," the Southern District, to retain "exclusive jurisdiction to enforce the terms of this Judgment and of the [ABA] Agreement."

Pursuant to the NBA Agreement, the teams authorized the NBA to pay plaintiff directly for plaintiff's share of the TV revenues. The NBA Agreement did not contain a forum selection clause. However, in 1983, a dispute arose between plaintiff and various creditors of plaintiff who had made conflicting demands to the NBA for plaintiff's share of the TV revenues. Caught in the middle, the NBA commenced an interpleader action in the Southern District. On November 20, 1985, the parties to the interpleader action settled their dispute via the "Interpleader Agreement." The Interpleader Agreement contained the following forum selection clause: "Each of the defendants in the interpleader action and the NBA agree that any action or proceeding relating to entitlement to future Spirits' T.V. Revenues shall be brought in the United States District Court, Southern District of New York."

On January 11, 2009, plaintiff brought this action alleging that the NBA and the teams failed to calculate and pay plaintiff its share of the TV revenues from certain NBA games telecast internationally. The first cause of action alleges breach of the NBA Agreement against all defendants. The second cause of action alleges breach of the ABA Agreement against the teams. The third cause of action alleges breach of the covenant of good faith and fair dealing against all defendants. The fourth cause of action asks for an accounting.

The motion court correctly granted the motion to dismiss this case because of the forum selection clauses in the ABA Agreement, the Consent Judgment and the Interpleader Agreement (*see generally Boss v American Express Fin. Advisors, Inc.*, 6 NY3d 242, 245-246 [2006]). First, the claims under the ABA Agreement (second cause of action) belong in federal court. By utilizing the word "shall," the ABA Agreement makes the forum mandatory, as does the Consent Judgment decreeing that the Southern District "retains exclusive jurisdiction to enforce the

terms of this Judgment and of the [ABA] Agreement" (*see Micro Balanced Prods. Corp. v Hlavin Indus.*, 238 AD2d 284 [1997]).

With respect to the claims under the NBA Agreement (first cause of action), plaintiff alleges that it has not received its fair share of the TV revenues from certain international broadcasts. Thus, it is a claim "relating to entitlement to future Spirits' T.V. Revenues" and belongs in the Southern District pursuant to the forum selection clause in the Interpleader Agreement.

Emphasizing the word "Spirits" in the Interpleader Agreement's forum selection clause, plaintiff argues that this clause applies only to a *third party's* entitlement to monies that rightfully belong to plaintiff. Plaintiff argues that the clause does not apply to this dispute where plaintiff seeks its own "basic right to its share of TV revenues from the NBA." However, the forum selection clause applies to disputes about "entitlement to *future* Spirits' T.V. Revenues" (emphasis added) and therefore encompasses TV revenues that plaintiff itself has not yet received. Nothing in the Interpleader Agreement evinces an intent to exempt direct claims on plaintiff's part. As a signatory, certainly plaintiff could have insisted on language to that effect had it been the parties' intention to leave out plaintiff's direct claims. Because we find that plaintiff's claims for breach of the NBA Agreement belong in the Southern District, we need not address defendants' contentions that the Southern District would have ancillary enforcement jurisdiction over plaintiff's claims under the NBA Agreement or that the NBA Agreement is "inextricably intertwined" with the ABA Agreement.

Plaintiff argues that no agreement can vest the federal courts with jurisdiction absent an independent basis for federal subject matter jurisdiction. While this is a correct statement, the Southern District should resolve issues regarding its own jurisdiction (*see Purcell v Town of Cape Vincent*, 281 F Supp 2d 469, 475 [ND NY 2003] ["it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in the judgement"]).

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Andrias, J.P., Saxe, Moskowitz, Acosta and Freedman, JJ. **[Prior Case History: 25 Misc 3d 1230(A), 2009 NY Slip Op 52343(U).]**