| |
|---|
| **Quinn v QVC Group, Inc.** |
| 2026 NY Slip Op 30683(U) |
| February 24, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 652440/2025 |
| Judge: Nicholas W. Moyne |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. NICHOLAS W. MOYNE**

*Justice*

| | |
|---|---|
| PART | 41M |

--------------------------------------------------------------------------------X

MICHAEL QUINN,

Plaintiff,

- v -

QVC GROUP, INC.,OLD WORLD PROVISIONS, INC,
ROSS SHUKET, CHRISTINA PENNYPACKER, JOHN
DOES 1-10, ABC CORPS 1-10

Defendant.

--------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 652440/2025 |
| MOTION DATE | 07/11/2025, 08/14/2025 |
| MOTION SEQ. NO. | 001 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 4, 5, 6, 7, 8, 9, 10, 11, 12, 13

were read on this motion to/for                              DISMISS                              .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24

were read on this motion to/for                              DISMISS                              .

Upon the foregoing documents, it is

The plaintiff Michael Quinn ("Plaintiff" or "Quinn") commenced this action seeking damages for breach of contract, tortious interference, and various other claims arising from the sale of his hot dog brand, "Feltman's of Coney Island," to the defendant Old World Provisions, Inc. ("OWP") and the subsequent alleged interference by the defendants QVC Group, Inc. ("QVC") and Christina Pennypacker ("Pennypacker").

There are two motions currently pending before the Court. In Motion Sequence 001, the defendants OWP and Ross Shuket move to dismiss the complaint pursuant to CPLR §§ 3211(a)(1) and (a)(7). In Motion Sequence 002, the defendants QVC and Christina Pennypacker move to dismiss pursuant to CPLR §§ 3211(a)(1), (a)(7), and (a)(8).

## FACTUAL BACKGROUND

The Court accepts the following factual allegations in the complaint as true for the purposes of these motions. The plaintiff Quinn was the owner of Feltman's

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 1 of 9

[* 1]

Management HoldCo., LLC, a specialty hot dog company. On or about January 24, 2023, Quinn sold the company and all of its intellectual property to the defendant OWP pursuant to an Asset Purchase Agreement ("APA" or "Contract") [NYSCEF Doc. No. 17 at ¶¶ 6, 41]. Under the APA, Quinn was to receive royalties for a period of seven years based on sales: $0.20 per pound of protein products for the first two years, $0.15 per pound for the remaining five years, and 5% of net sales for other products [*Id*. at ¶ 41; NYSCEF Doc. No. 7 at 4]. The plaintiff alleges these royalties were the sole consideration provided by OWP in exchange for the purchase of Feltman's. [NYSCEF Doc. No. 10 at 4].

Prior to the sale, the plaintiff had successfully marketed the brand through appearances on QVC, generating over $721,000 in sales in three segments [NYSCEF Doc. No. 17 at ¶¶ 7, 17]. However, on or about June 7, 2023, the plaintiff claims that he became the target of a cyberbullying campaign due to his association with a neurodivergent social media influencer, Joshua Block [Id. at ¶¶ 14, 20]. Certain individuals online claimed that the plaintiff was taking advantage of disabled people and was exploiting Block and his autism for personal and financial gain [*Id*. at ¶19]. These individuals contacted QVC and made knowingly false allegations against Quinn [*Id*. at ¶ 22].. In response, QVC, through its employee defendant Christina Pennypacker, cancelled all of Quinn's scheduled appearances and demanded that OWP sever all ties with Quinn. Specifically, Pennypacker allegedly emailed OWP executive Ross Shuket stating, "Feltman's will never appear on QVC as long as Michael Quinn is affiliated with it" [Id. at ¶ 94]. Shuket subsequently demanded Quinn delete his social media presence regarding the brand [Id. at ¶ 27]. The plaintiff alleges that as a result of these actions, OWP ceased marketing the products and withdrew the product from 6,000 retail locations. As a result, sales plummeted, resulting in royalty payments to the plaintiff of less than $500 in 2024 [Id. at ¶¶ 44-45].

The APA contains a clause that the plaintiff refers to as a "sunset provision." The sunset provision refers to the expiration of the "Deferred Payment Period" as defined in the APA. Under the terms of the deal, the plaintiff transferred full ownership of the Feltman's brand and intellectual property to OWP in exchange for the royalty payments as set forth above. The royalty payments are contractually limited to a period of seven (7) years commencing on the closing date (January 24, 2023) and ending in 2030 [NYSCEF Doc. No. 7 at 2, § 2.2.1]. The plaintiff argues that this seven-year limitation is critical to his claims for breach of contract, unjust enrichment, and fraud for several reasons. The plaintiff maintains that because there was no upfront payment and royalties were the sole consideration, the sunset provision allowed OWP to acquire a valuable company for pennies on the dollar

[* 2]

(or effectively nothing) if they simply refuse to properly market the product until 2030. Once the seven-year period expires, OWP retains full ownership of the trade secrets, recipes, and intellectual property, but owes the plaintiff no further compensation. The plaintiff argues that this gave OWP incentive to cease all of their marketing efforts and prevent the plaintiff from undergoing any marketing efforts until the royalty payment period under the APA expired. Essentially, the plaintiff argues he was at the mercy of the defendants, creating a legal necessity for this Court to intervene to prevent the contract from being unconscionable or illusory.

### DISCUSSION

Motion Sequence 001

In motion sequence 001, the defendants OWP and Shuket move to dismiss pursuant to CPLR §§ 3211 (a)(1) and (a)(7). The defendants claim the cause of action asserted against them in the complaint are conclusively rebutted by documentary evidence and/or fail to state a cognizable claim. For the reasons stated below, the motion is granted in part and denied in part.

Under CPLR 3211 (a) (7), the movant has the burden to demonstrate that the complaint, construed liberally in favor of the plaintiff, states no legally cognizable cause of action (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *see also Goshen v Mut. Life Ins. Co. of NY*, 98 NY2d 314, 326 [2002]. Plaintiff is accorded "the benefit of every possible favorable inference" (*Goshen*, 98 NY2d at 326 [internal quotation marks and citation omitted]). "Whether the plaintiff will ultimately be successful in establishing [its] allegations is not part of the calculus" (*Greystone Funding Corp. v Kutner*, 121 AD3d 581, 583 [1st Dept 2014] [internal quotation marks and citation omitted]).

"When documentary evidence is submitted by a defendant 'the standard morphs from whether the plaintiff has stated a cause of action to whether it has one' " (*Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 135 [1st Dept 2014]). On a "CPLR 3211 (a) (1) motion to dismiss on the ground that the action is barred by documentary evidence, such motion may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen*, 98 NY2d at 326; *see also Art & Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436, 438 [1st Dept 2014]).

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 3 of 9

"In order to prevail on a CPLR 3211 (a) (1) motion, the documents relied on must definitively dispose of plaintiff's claim" (*Blonder & Co., Inc. v Citibank, N.A.*, 28 AD3d 180, 182 [1st Dept 2006]). "If the documentary proof disproves an essential allegation of the complaint, dismissal pursuant to CPLR 3211 (a) (1) is warranted even if the allegations, standing alone, could withstand a motion to dismiss for failure to state a cause of action" (*Kolchins v Evolution Mkts., Inc.*, 128 AD3d 47, 58 [1st Dept 2015], *affd* 31 NY3d 100 [2018]). "Judicial records, such as judgments and orders, would qualify as 'documentary,' as should the entire range of documents reflecting out-of-court transactions, such as contracts, deeds, wills, mortgages, and even correspondence" (*Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc.,* 120 AD3d 431, 432 [1st Dept 2014] [internal quotation marks and citations omitted]).

The first cause of action is for breach of contract. The plaintiff alleges OWP breached the APA by failing to properly market and sell Feltman's products, thereby destroying his royalty stream. OWP argues the APA contains a merger clause (§ 21.12) and no explicit requirement to market or sell the product [NYSCEF Doc. No. 5 at ¶ 5]. Contracts and their terms, including merger clauses such as that in the APA, are the kind of documentary evidence properly considered on a motion to dismiss pursuant to CPLR § 3211(a)(1), and such a merger clause can warrant granting a motion dismissing claims for breach of contract, breach of fiduciary duty and/or fraud where the plaintiff's allegations are clearly precluded by the merger clause and/or barred by the parol evidence rule (*see Denenberg v Schaeffer*, 137 AD3d 1197, 1198 [2d Dept 2016]; *SNS Bank, N.V. v Citibank, N.A.*, 7 AD.3d 352, 354 [1st Dept 2004]).

This case however involves an APA, wherein royalty payments were the sole consideration received by the plaintiff, in exchange for the sale of his entire company, including all tangible and non-tangible assets. The plaintiff argues that under New York law, this type of contract, which is really a form of licensing agreement, creates a type of implied duty on the part of the defendants to use their best efforts to market, sell and distribute the subject products, given that they did not pay any up-front consideration for the plaintiff's business, intellectual property or trade secrets. Without this implied duty, the plaintiff would be at the mercy of the defendants who could simply delay any marketing or sale of the products until the time period when their contractual obligations under the APA were no longer in effect.

This argument finds support in longstanding New York caselaw that holds that a court may imply into an agreement an obligation that a license must use

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 4 of 9

[* 4]

reasonable efforts to exploit the licensed products, particularly in circumstances where the payment of royalties on the sale of licensed products is the only consideration received in exchange for the exclusive license. The seminal opinion remains Justice Cardozo's decision in *Wood v Lucy, Lady Duff-Gordon*, 222 NY 88 [1917]. In *Wood*, the parties signed an agreement by which the defendant, who designed clothing and related accessories, gave plaintiff the exclusive right to place her indorsements on the designs of others, with the parties to share the profits equally. The plaintiff sued the defendant for breaching the exclusivity provision, and defendant argued that the agreements lacked mutuality because plaintiff had not bound himself to any promise.

Justice Cardozo rejected that contention, holding that although plaintiff "does not promise in so many words that he will use reasonable efforts to place the defendant's indorsements and market her designs ... such a promise is fairly to be implied." (*Id.* at 90–91) Justice Cardozo was concerned that "[u]nless [licensee] gave his [reasonable] efforts, [licensor] could never get anything." (*Id*. at 91) As he explained, "[w]e are not to suppose that one party was to be placed at the mercy of the other." (*Id*).

Whether the holding in *Wood* is applicable to this case is a fact-intensive question that cannot be resolved on the pleadings or the documentary evidence, mainly the APA, submitted by the defendants. Where it is alleged that a contract grants an exclusive agency and the sole compensation is a share of profits or royalty payments, the court may imply a duty to use best efforts to generate sales to prevent the contract from being illusory (*see Wood*, 222 NY at 90-91; *Credit Suisse First Boston v Utrecht-America Finance Co.*, 80 AD3d 485, 489 [1st Dept 2011]). When the parties have indicated an intent to be contractually bound, courts should attempt to enforce that bargain and avoid an interpretation that makes the contract illusory and unenforceable due to lack of mutual consideration (*see Curtis Proprieties Corp. v Grief Companies*, 212 AD2d 259, 265-266 [1st Dept 1995]).

The plaintiff argues that royalties were the sole consideration provided by OWP. OWP claims that it also assumed the liabilities of the company, but the plaintiff refutes that by arguing that any assumption of liabilities under the APA was illusory given that the company had zero liabilities at closing. (NYSCEF Doc. No. 10 at 4; NYSCEF Doc. No. 21 at 16). This too is an issue of fact that cannot be resolved on a motion to dismiss. While most of the cases cited are federal cases, there is a well-developed body of caselaw holding that a contract to pay royalties contains an implied covenant to use reasonable efforts to market the product—

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 5 of 9

[* 5]

where the only compensation called for by the contract is payment of royalties. (*See, e.g.*, *Zilg v. Prentice–Hall, Inc.*, 717 F2d 671, 680 (2d Cir.1983) [When a publisher has exclusive rights to publish a book, "the promise to publish ... implies a good faith effort to promote the book ...."], *cert. denied*, 466 U.S. 938, [1984]; *Bloor v Falstaff Brewing Corp.*, 601 F2d 609, 614 [2d Cir.1979] [Due to royalty provision, "[e]ven without the best efforts clause [defendant] would have been bound to make a good faith effort to see that substantial sales of [plaintiff's] products were made."] ; *G. Golden Assoc. of Oceanside, Inc. v. Arnold Foods Co., Inc.*, 870 FSupp. 472, 476 [E.D.N.Y.1994] ["It is well settled under New York law that where ongoing commissions or royalties are to be paid in an exclusive arrangement, a court will imply a covenant on the part of an exclusive licensee/assignee to exploit the subject matter of the license/assignment with due diligence 'where such a covenant is essential as a matter of equity to give meaning and effect to the contract as a whole.' '])

While OWP relies on *Sharkey v. Zimmer USA, Inc.* 2021 WL 3501160 [SDNY 2021]) to argue against implied duties where there is an integration clause, *Sharkey* is distinguishable. In *Sharkey*, the plaintiff received a $100,000 upfront payment, meaning the contract had value regardless of sales and the contract also expressly disclaimed any implied duty to use best efforts (*id.* at *7-8). Here, taking the plaintiff's allegations as true, he received no upfront payment. Without an implied duty to market, OWP could theoretically sell zero products, pay zero royalties, and own the brand for free, placing the plaintiff at the mercy of OWP, the precise scenario *Wood* prohibits (*Wood*, 222 NY at 91). Whether OWP used reasonable efforts or whether its cessation of marketing was a justifiable business decision in light of the QVC controversy is a question of fact not suitable for dismissal at the pleading stage (*see Bloor*, 601 F2d at 609 ). Thus, the first cause of action survives.

The second cause of action is for breach of the duty of loyalty. This claim is dismissed. This was clearly an arm's-length commercial transaction. OWP was nothing more than a purchaser of assets who agreed to give the plaintiff royalty payments in exchange for those assets. There was no fiduciary relationship created that would assume a higher level of trust between the parties or impose a duty of loyalty on OWP towards the plaintiff. No fiduciary relationship has been pled between a buyer and seller of assets that would sufficiently support this claim.

The third cause of action is for Breach of Good Faith and Fair Dealing. This claim is dismissed as duplicative of the breach of contract claim. Both claims arise from the same facts (failure to properly market and sell the Feltman's products)

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 6 of 9

[* 6]

and seek identical damages (see *Logan Advisors, LLC v Patriarch Partners, LLC*, 63 AD3d 440, 443 [1st Dept 2009]).

The fourth and sixth causes of action allege fraud and misrepresentation. These claims are inadequately pled as they only assert that OWP entered into the APA while knowing that they never intended to actually attempt to sell or market any Feltman's products until after the sunset provision. A fraud claim cannot be based solely on an allegation that a party did not intend to perform a contract (*see Remora Capital S.A. v Dukan*, 175 AD3d 1219, 1221 [1st Dept 2019]). Plaintiff's allegation that OWP misrepresented their intent to market and/or sell Feltman's products is indistinguishable from the breach of contract claim. Accordingly, the fourth and sixth causes of action are dismissed. The fifth cause of action for unjust enrichment is also dismissed because a valid contract (the APA) governs the subject matter of the dispute.

Finally, the ninth and tenth causes of action are dismissed as they fail to state a cause of action. The ninth cause of action seeks to pierce the corporate veil and hold Ross Shuket personally liable for the breach of the APA. A party seeking to pierce the corporate veil must show "complete domination of the corporation in respect to the transaction attacked" and that "such domination was used to commit a fraud or wrong against the plaintiff" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]). Because "New York law disfavors disregard of the corporate form, mere conclusory allegations that the corporate structure is a sham are insufficient to warrant piercing the corporate veil (*see Sutton 58 Assoc. LLC v Pilevsky*, 189 AD3d 726, 729 [1st Dept 2020]; *Metropolitan Transp. Auth. v Triumph Adv. Prods.*, 116 AD2d 526, 528 [1st Dept 1986]). Instead, the party seeking to pierce the corporate veil "must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party." (*Morris,* 82 NY2d at 142)

Here, the plaintiff fails to allege facts showing Shuket abused the corporate form of OWP to commit a fraud. The allegations that Shuket forced Quinn to delete tweets and cease his own marketing efforts on behalf of Feltman's are actions taken in his corporate capacity as Executive Vice President to preserve the business relationship with QVC, not an abuse of the corporate structure for personal gain. This claim is dismissed. The tenth cause of action for equitable fraud is also dismissed. As conceded by the plaintiff, this is duplicative of other fraud claims and generally unavailable to private litigants seeking money damages [NYSCEF Doc. No. 21 at 21].

[* 7]

Accordingly, in motion sequence 001, the motion to dismiss is granted to the extent that the second through tenth causes of action are hereby dismissed as to the defendants OWP and Shuket and denied to the extent that the first cause of action for breach of contract is allowed to go forward on an implied contract theory as against OWP.

Motion Sequence 002

In Motion Sequence 002, the defendants QVC and Christina Pennypacker move to dismiss pursuant to CPLR §§ 3211(a)(1), (a)(7), and (a)(8). They argue that this action in New York is precluded by a mandatory forum selection clause in the APA. They also maintain that the complaint fails to state a cause of action against them and that the court lacks personal jurisdiction over them.

A contractual forum selection clause is documentary evidence that may provide a proper basis for dismissal (*see Landmark Ventures, Inc. v Birger*, 147 AD3d 497 [1st Dept 2017]). Section 21.5 of the APA states:

"The parties agree that the courts of the State of New York, Albany County, and the Federal District Court for the Northern District of New York, shall be the appropriate sites of venue for actions relating to this Agreement..." [NYSCEF Doc. No. 18 at 23, § 21.5].

The plaintiff argues that this clause is non-exclusive. However, the use of the word "shall" renders the clause mandatory (*see Spirits of St. Louis Basketball Club, L.P. v Denver Nuggets, Inc.*, 84 AD3d 454, 455 [1st Dept 2011]). While QVC and Pennypacker are non-signatories, they may invoke the clause because they are closely related to the dispute and the claims against them (tortious interference) are expressly premised on the existence and terms of the APA (*see Cfirstclass Corp. v Silverjet PLC*, 560 FSupp2d 324, 328 [SDNY 2008]). The Court finds the clause is mandatory and designates Albany County or the Northern District of New York as the exclusive venues.. However, an argument can be made that since OWP, a signatory to the APA has seemingly waived enforcement of the forum selection clause, the non-signatory party can no longer invoke it..

Even if venue were proper, the claims against QVC and Pennypacker fail on the merits. To plead tortious interference with contract, a plaintiff must allege: (1) the existence of a valid contract; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the breach without justification; (4) actual breach; and (5) damages (*see Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 424 [1996]). Most importantly, a plaintiff must plead that the defendants

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 8 of 9

[* 8]

acted without economic justification (*see Levine v Yokell*, 258 AD2d 296 [1st Dept 1999]). The complaint itself alleges that QVC received multiple complaints and threats of a boycott from the public regarding the plaintiff's social media conduct and his interactions with Joshua Block, and that QVC acted to protect its brand from further attacks. [NYSCEF Doc. No. 17 at ¶¶ 20, 22; NYSCEF Doc. No. 10 at 5]. Protecting one's own business interest from public controversy and customer complaints constitutes a valid economic justification and thus the plaintiff cannot make out a cause of action for tortious interference against QVC or Ms. Pennypacker. Accordingly, in motion sequence 002, the motion to dismiss is granted and the complaint is dismissed in its entirety against the defendants QVC and Christina Pennypacker.

In Motion sequence 001, the motion to dismiss is granted in part and denied in part. The second, third, fourth, fifth, sixth, ninth and tenth causes of action are dismissed with prejudice The motion is denied as to the first cause of action for breach of contract against the defendant OWP only and the action shall proceed solely on this claim against OWP only. In motion sequence 002, the motion to dismiss by defendants QVC and Christina Pennypacker is granted and the complaint is dismissed in its entirety as against them with prejudice. OWP shall have 20 days from the date of this order to serve an answer to the remaining cause of action.

This constitutes the Decision and Order of the Court.

| | |
|---|---|
| **2/24/2026** | |
| **DATE** | **NICHOLAS W. MOYNE, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

652440/2025   QUINN, MICHAEL vs. QVC GROUP, INC. ET AL
Motion No. 001 002

Page 9 of 9

9 of 9